Isaac HASKINS, Jr., Plaintiff in error,

v.

STATE of Wisconsin, Defendant in error.

Supreme Court

*No. 78-656-CR. Argued May 7, 1980.—Decided June 27, 1980.*
(Also reported in 294 N.W.2d 25.)

For the plaintiff in error there were briefs by *William M. Coffey, Clifford R. Steele* and *Coffey & Coffey* of Milwaukee, and oral argument by *William M. Coffey* and *Clifford R. Steele.*

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J. The principal issues on this review concern the admissibility of evidence of "other crimes" committed by the defendant's associates and the permissibility of cross-examination regarding events which form the basis of pending criminal prosecutions facing the defendant. We took this case by petition to bypass the court of appeals, consolidating it for purposes of disposition with *Neely v. State*, 97 Wis.2d 38, 292 N.W.2d 859 (1980), which involved the same crime and raised related issues.

## I.

Following a jury trial, plaintiff in error Isaac Haskins was convicted of first-degree murder, party to a crime, for his participation in the shooting death of Felix Winters. As related in *Neely v. State, supra,* Winters and two other men robbed Haskins at his home. Haskins, in an attempt to locate Winters, went to the home of Winters' girl friend, Kathleen Lessard, accompanied by nine other men. Lessard testified her house was ransacked, and Haskins threatened the lives of Winters, who was not present, and Lessard and her son, who were present. At Haskins' order, one of his men, Robert Neely, took Lessard to the home of Helen Wright, the girl friend of one of Winters' accomplices. Neely forced his way into Wright's home and pointed a gun in her face, demanding to know the whereabouts of her boyfriend. Neely took from Wright some of the money that earlier had been stolen from Haskins and telephoned Haskins. Haskins arrived minutes later, and Neely gave him the money taken from Wright. Haskins then told Wright to let him know if her boyfriend contacted her. As a result of his participation in the events at the Wright and Lessard homes, Haskins was charged with ten felony counts in an information filed by the Milwaukee County District

Attorney; at the time of these events, Wright and Lessard resided in Milwaukee County.

Several days after the robbery, Winters telephoned Haskins to apologize and offer reparation. Haskins appeared to accept Winters' overture but devised and directed a plan to kill him. *See: Neely v. State, supra,* p. 40. Pursuant to this plan, Winters was driven to a field in Kenosha County where he was shot and killed by Neely.

Haskins was charged with first-degree murder, and a jury trial was held commencing January 10, 1977. Prior to trial, Haskins filed a motion in limine requesting an order "prohibiting the prosecution from introducing any testimony or evidence upon the trial of this cause concerning any alleged crimes other than the crime charged and for which the defendant is on trial." Defense counsel made clear that the motion was directed to the incidents which occurred at the Wright and Lessard residences on the night of the robbery of Haskins and sought to have evidence of those incidents declared inadmissible as improper "other crimes" evidence and as having prejudicial effect which outweighed its probative value. The trial court denied the motion, deferring consideration of the issue until the evidence was actually proffered. At trial, the evidence was admitted.

Prior to the commencement of Haskins' presentation of evidence, defense counsel moved to prohibit the state from questioning the defendant on cross-examination concerning the Wright and Lessard incidents about which Haskins did not intend to testify on direct. Defense counsel further requested, in the alternative, that Haskins be permitted to invoke his privilege against self-incrimination and to refuse to answer any questions about those incidents. The trial court ruled that the state would be permitted to ask any relevant questions concerning the Wright and Lessard incidents if Haskins took the stand and that Haskins would be ordered by the

court to answer the questions. Even if Haskins' testimony on direct avoided mention of the incidents, the trial court concluded they were proper subjects of cross-examination as "incidents which occurred in the middle of the entire question—conspiracy to commit first degree murder." Defense counsel then advised the court that, because of this ruling, Haskins would not testify and made an offer of proof as to what Haskins' testimony would be if he had testified. Haskins did not take the stand, and the jury ultimately found him guilty. Writs of error were issued to review the judgment of conviction and the order denying post-trial motions. Further facts are stated in the opinion.

## II.

Haskins argues the trial court erred in admitting three items of testimony: (1) the testimony of Lessard that, while she and Haskins were conversing at her dining room table, an unidentified person held a gun to the head of her child to induce her to disclose the whereabouts of Winters; (2) the testimony of Lessard that, while she was at Wright's apartment and outside Haskins' presence, Neely injected her with heroin in order to make her talk; and (3) Wright's testimony that Neely pointed a gun at her face when he entered her apartment in search of her boyfriend. After considering the merits of Haskins' contentions,[1] we conclude the

---

[1] The state contends the arguments made on review were not properly raised at trial and any claimed error has not been preserved. Whether or not Haskins' objections were made in a form compatible with the state's understanding of the rules of waiver, it cannot be disputed that Haskins did indeed apprise the trial court of his contention that evidence concerning "other crimes" occurring at the homes of Wright and Lessard was inadmissible as irrelevant and prejudicial. Because Haskins' arguments on the merits are so unpersuasive, we choose not to waste judicial re-

trial court committed no error in admitting the challenged testimony.

Haskins contends the testimony is inadmissible as evidence of "other crimes," under sec. 904.04(2), Stats.[2] We disagree. In *State v. Spraggin*, 77 Wis.2d 89, 99, 252 N.W.2d 94 (1977), we discussed the use of "other crimes" evidence to establish a "plan":

> "The word 'plan' in sec. 904.04(2) means a design or scheme formed to accomplish some particular purpose. . . . Evidence showing a plan establishes a definite prior design, plan, or scheme which includes the doing of the act charged. As Wigmore states, there must be 'such a concurrence of common features that the various acts are materially to be explained as caused by a general plan of which they are the individual manifestations.' "

Haskins was charged with causing the death of Winters, in concert with others. At trial, the state presented evidence in an effort to establish "a definite prior design, plan, or scheme" to apprehend and kill Winters. Locating Winters was a necessary and integral part of that design, plan, or scheme. The evidence Haskins claims was wrongly admitted showed members of Haskins' gang employing forcible and violent means in attempts to determine Winters' whereabouts. The acts were committed by members of the conspiracy to kill Winters; the

---

sources on a close and difficult question of waiver. Moreover, Haskins did raise objections to the testimony. Thus consideration of the grounds of objection argued in this court is not improper. *See, e.g.: Anderson v. United States*, 417 U.S. 211, 217 n. 5 (1974).

[2] Sec. 904.04(2), Stats., provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

victims of the acts were closely identified with either Winters or another robber. The acts and the conspiracy shared a common aim—apprehension of Winters. These common features explain the acts " 'as caused by a general plan [to kill Winters] of which they are the individual manifestations.' " *Id.*, quoting 2 Wigmore, *Evidence*, sec. 304 (3d ed. 1940). As such, evidence of the acts could be offered under the exception to sec. 904.04 (2), Stats., allowing proof of plan.

Additionally, the evidence was properly offered under the exception allowing proof of motive. As the court of appeals recognized in *Neely v. State*, 86 Wis.2d 304, 311, 272 N.W.2d 381 (Ct. App. 1978), evidence of the acts at the homes of Wright and Lessard demonstrated the motive for the murder—Haskins' desire to get revenge against Winters for robbing him. The misdeeds and the actors' accompanying words show motive, "the reason which leads the mind to desire that result." *Baker v. State*, 120 Wis. 135, 145–46, 97 N.W. 566 (1903). The acts vividly reveal the intensity of the desire of Haskins and his accomplices to get revenge.

That these acts were not committed by Haskins does not render them inadmissible, as he argues. "[W]here several parties conspire or combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in the prosecution of the common design, the act of each one of the conspirators being, in contemplation of the law, the act of each and all." *Pollack v. State*, 215 Wis. 200, 211, 253 N.W. 560 (1934) ; *Kraut v. State*, 228 Wis. 386, 399, 280 N.W. 327 (1938). Acts of one conspirator in furtherance of the conspiracy are admissible against the others[3] to evi-

---

[3] *Pollack v. State*, 215 Wis. 200, 214, 253 N.W. 560 (1934); *United States v. Burke*, 495 F.2d 1226, 1232 (5th Cir. 1974).

dence intent[4] or plan.[5] The identity of actors created by the law of conspiracy permits Haskins' invocation of sec. 904.04(2), Stats. However, this aspect of the law of conspiracy disposes of Haskins' objection under that section. The identity of actors renders the objected-to testimony, which relates "other crimes" evincing the motive and plan of Haskins' co-conspirators, relevant evidence of Haskins' motive and plan, as the acts are deemed in law to be those of Haskins.[6]

To be admissible under sec. 904.04(2), Stats., evidence of other acts must not only be relevant but also be possessed of "probative value [which] must not be substantially outweighed by the dangers of unfair prejudice, confusion of the issues or misleading the jury or by consideration of undue delay, waste of time or needless presentation of cumulative evidence." *State v. Johnson,* 74 Wis.2d 26, 41, 245 N.W.2d 687 (1976). The balancing of these considerations and the consequent decision as to admissibility are committed to the discretion of the trial court. *Hammen v. State,* 87 Wis.2d 791, 799–800, 275 N.W.2d 709 (1979); *State v. Spraggin,* 77 Wis.2d at 94–95; *Kelly v. State,* 75 Wis.2d 303, 319, 249 N.W.2d 800 (1977). In this case the trial court made no explicit determination that the probative value of the evidence was not outweighed by its possible prejudicial effect. This result, however, must be attributed to defense counsel's failure to make his objection explicit and not to any fail-

[4] *Weisenbach v. State,* 138 Wis. 152, 161, 119 N.W. 843 (1909); 2 Wigmore, *Evidence,* sec. 370 (Chadbourn rev. 1979).

[5] 2 Wigmore, *supra.*

[6] Application of these principles of the law of conspiracy is unaffected by the failure of the information filed against Haskins to refer to the party-to-a-crime section of the statutes. *Pollack v. State, supra* at 214; *Bethards v. State,* 45 Wis.2d 606, 617–18, 173 N.W.2d 634 (1970); *State v. McClanahan,* 54 Wis.2d 751, 755, 196 N.W.2d 700 (1972); *State v. Cydzik,* 60 Wis.2d 683, 687–88, 211 N.W.2d 421 (1973).

ing of the trial court. The deficiency in the record does not require reversal; "this court will uphold a discretionary decision of the trial court if the record contains facts which would support the trial court's decision had it fully exercised its discretion." *Hammen v. State, supra* at 800. On this record any danger of unfair prejudice clearly does not outweigh the testimony's probative value; none of the grounds set forth in sec. 904.03, Stats., on which the trial court might exclude relevant evidence are present here.

## III.

Haskins presents two arguments concerning his privilege against compelled self-incrimination. First, he argues that cross-examination concerning the Wright and Lessard incidents could not be permitted if his testimony on direct avoided mention of the incidents. Second, he urges that he was entitled to assert his privilege against self-incrimination as to any question asked him concerning these events. The trial court ruled adversely to Haskins on each of these contentions; Haskins declined to testify and instead made an offer of proof as to what his testimony would have been had he taken the stand. Haskins now claims the trial court's rulings compelled him not to testify in his defense because to do so could have resulted in self-incrimination. He argues Wisconsin cannot constitutionally require him to choose between complete silence and effecting a waiver of his privilege against self-incrimination by testifying. We disagree.

We first consider the extent of review Haskins' claims are entitled to receive. In its opinion affirming Neely's conviction, the court of appeals stated that a criminal defendant who desires to testify but fears that questions might be asked on cross-examination which would incrim-

inate him in a subsequent criminal proceeding should make a motion in limine. At that point the trial court could determine the extent of the defendant's waiver and the scope of cross-examination and advise both the defendant and the state, in advance, of what would happen if the defendant took the stand. The court of appeals stated that, if the defendant thought the trial court's ruling was incorrect, he could refuse to testify and raise the issue on appeal if convicted, having preserved the issue for review by making the motion in limine. *Neely v. State,* 86 Wis.2d at 328–29. Although *Neely* was decided subsequent to Haskins' trial, he followed an identical procedure and claims in this court that the trial court's incorrect ruling on his motion in limine entitles him to a new trial.

Haskins' trial tactic and the opinion of the court of appeals pose difficulties for appellate courts attempting to review the challenged trial court ruling since this method requires review of an essentially hypothetical ruling. Because, as this court stated in *Neely,* the existence of a defendant's privilege to refuse to answer a prosecutor's inquiry on cross-examination depends on the relevance of the question to the defendant's testimony on direct, the issue of privilege and its possible waiver cannot be determined with any certainty until cross-examination begins. *Neely v. State,* 97 Wis.2d at 47–49. Until the subject matter of the defendant's testimony and the actual questions are known, disputes as to whether the defendant has waived his privilege against self-incrimination as to those questions are not factually presented. Because Haskins did not take the stand, our review of the trial court's denial of Haskins' motion in limine and alternative motion asserting the Fifth Amendment privilege is limited to two issues: Whether *all* questions concerning the Wright and Lessard incidents are precluded and whether the privilege against self-in-

crimination justifies a refusal to answer *any* such question. The appropriateness of particular questions which were never asked cannot be considered, nor can the correctness of a refusal to answer those unasked questions. A more informative method of raising claims, such as those raised by Haskins, would be for the defendant to take the stand and appeal a subsequent conviction if—following a claim of privilege—he were ordered to answer the prosecutor's questions on cross-examination. Only in this way may the defendant's claim be presented to a reviewing court in a concrete, factual context.[7]

In *Neely v. State,* 97 Wis.2d at 45–50, we held that a criminal defendant who testifies in his own behalf effects a waiver of his privilege against self-incrimination which extends, at a minimum, to matters reasonably related to the subject matter of his direct examination. That the defendant might have avoided mention of a subject during his direct examination did not necessarily foreclose coverage of that subject by the prosecutor's questions; the touchstone was relevance to matters raised by the defendant's own testimony. In *Neely,* Haskins' co-conspirator refused to answer seven questions regarding the Wright and Lessard incidents after having portrayed himself, on direct examination, as an innocent bystander to Winters' murder. We concluded that Neely's role in the Wright and Lessard incidents, the subject matter of the prosecutor's questions, was relevant to Neely's claim of innocent participation and that Neely had waived his privilege against self-incrimination and, therefore, could not properly refuse to answer the prosecutor's questions.

---

[7] "Moreover, requiring that the claim be presented only by those who have taken the stand will prevent defendants with no real intention of testifying from creating artificial constitutional challenges to their convictions." *New Jersey v. Portash,* 440 U.S. 450, 462 (1979) (Powell, J., joined by Rehnquist, J., concurring).

With respect to the contentions of Haskins, we conclude the challenged rulings of the trial court are correct. After reviewing the defendant's offer of proof, we cannot say that on cross-examination the district attorney could not have propounded *any* question concerning the Wright and Lessard incidents. Similarly, we cannot say that Haskins was entitled to assert his privilege against self-incrimination as to *any* question asked him regarding those incidents. As in *Neely,* the nature of the defendant's participation in those events could reveal as feigned Haskins' story of the innocent nature of his pursuit of Winters.

Because of our conclusion that the trial court correctly denied Haskins' motions, we are left with the related contentions that Haskins was compelled to exercise his Fifth Amendment right to remain silent [presumably resulting in a claimed violation of a criminal defendant's due process right to testify in his own behalf, *see, State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487, 490 (1980)], and that Haskins was denied due process by being forced to choose between complete silence and a waiver of his privilege against self-incrimination by testifying in his behalf. These contentions are without merit.

The defendant's first contention must be rejected for the reason that Haskins was not compelled to relinquish his right to testify on his behalf. "We refuse to hold that a defendant's subjective impressions of what he is 'forced' to do during his trial are enough to render his [failure to testify] involuntary." *United States v. Hearst,* 563 F.2d 1331, 1339 (9th Cir. 1977). His second contention is identical to one made in the *Neely Case* which was rejected by this court as "utterly without merit." *Neely v. State,* 97 Wis.2d at 53. *See also: McGautha v. California,* 402 U.S. 183, 215 (1971) ; *Williams v. Florida,* 399 U.S. 78, 83–84 (1970).

## IV.

Haskins next presents numerous claims of error, none of which, we conclude, require reversal of the judgment of conviction.

He first complains of error in a number of evidentiary rulings made by the trial court. Haskins claims error occurred when Elwood Garner, an accomplice of Haskins', was permitted to testify regarding the conditions of his probation, particularly when Garner testified as to the condition that he "continue to cooperate in this case." Haskins claims this testimony should have been excluded as immaterial and irrelevant. We disagree. "The reason for turning state's witness is material." *Champlain v. State,* 53 Wis.2d 751, 757, 193 N.W. 2d 868 (1972). While in most cases it is the defendant who would attempt to elicit the type of testimony at issue here, the state may bring it out on direct. *See: State v. Calhoun,* 13 Wash. App. 644, 536 P.2d 668, 673 (1975).[8] Haskins also claims the trial court erred in refusing to grant a mistrial when Garner testified to the reason why he was granted probation. Defense counsel immediately objected to the testimony, contending it was hearsay, immaterial and irrelevant, and moved for a mistrial. The trial court sustained the objection, ordered that the answer be stricken, and ordered the jury to disregard the answer. The motion for a mistrial was denied. Haskins now contends this is error. A motion for a mistrial is addressed to the sound discretion of the trial court, and its decision will not be reversed unless there has been "a clear abuse of discretion." *State v. Davidson,* 44 Wis.2d 177, 194, 170 N.W.2d 755 (1969).

---

[8] Even if error, admission of the testimony surely does not require reversal. *See: United States v. Thaggard,* 477 F.2d 626, 633 (5th Cir. 1973), *cert. denied* 414 U.S. 1064; *Virgil v. State,* 84 Wis.2d 166, 182, 267 N.W.2d 852 (1978).

We find no abuse of discretion here. "Any prejudicial effect which might have flowed from the statement was cured by the court's immediate instruction to the jury to disregard the statement." *State v. Medrano,* 84 Wis. 2d 11, 25, 267 N.W.2d 586 (1978).

Haskins also contends the trial court committed error in admitting, over a hearsay objection, the testimony of Helen Wright regarding Neely's statements to her. Specifically, Haskins complains of the admission of Neely's statement "to forget about Michell [Wright's boyfriend] because he's a dead man." Whether or not "offered in evidence to prove the truth of the matter asserted," sec. 908.01(3), Stats.,[9] a statement "is not hearsay if . . . [it] is offered against a party and is . . . [a] statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Sec. 908.01(4)(b)5, Stats. As indicated earlier, the evidence in this case established a conspiracy between Haskins and others, including Neely, to apprehend and kill Winters. The statements Neely made at Wright's residence were made during the course of and in furtherance of that conspiracy. Accordingly, the statements are not hearsay.

Haskins also claims the trial court erred by admitting hearsay evidence when Helen Wright was permitted to answer, over defense counsel's hearsay objection, the following question:

"Q (By Mr. Schroeder:) During the course of that interview you had with these gentlemen in Milwaukee on January 4th, 1976, Miss Wright, did you make the statement that Isaac Haskins told you it didn't make any difference to him if he got it through you and the kids or Michell, and that you might as well give up your man because he's dead?"

---

[9] The prosecution did not offer the statement to prove that Michell was dead; Michell had testified for the state at Haskins' trial.

The question sought to establish two statements: Haskins' statement to Wright, and Wright's statement to the police repeating Haskins' statement. Neither was hearsay. Haskins' statement was offered against a party and was his own statement, sec. 908.01(4)(b)1, Stats.; Wright's statement, because she had denied during direct examination that Haskins made any threats to obtain her cooperation, was a prior, inconsistent statement of a declarant who testified at trial and was subject to cross-examination concerning the statement; thus her statement was not hearsay. Sec. 908.01(4)(a)1, Stats. With regard to Wright's answer to the question, Haskins claims he was entitled to a limiting instruction informing the jury that her testimony was received as evidence only for purposes of impeachment, and not for the truth of what was said. Such an instruction would be inappropriate. Recently, we held that no bar exists to the substantive use of the prior, inconsistent statement of a witness called by the state. *Vogel v. State,* 96 Wis.2d 372, 291 N.W.2d 838, 842–45 (1980), *affg.* 87 Wis.2d 541, 275 N.W.2d 180 (Ct. App. 1979).

The final hearsay argument presented by Haskins concerns the propriety of allowing a police officer-witness to testify to the statements to him by Julius Nash, one of the state's witnesses against Haskins. Defense counsel objected to that testimony on grounds that it was hearsay, but that objection was overruled. The trial court's ruling was correct. Nash was a witness and was subject to cross-examination. On his cross-examination, defense counsel attempted to demonstrate inconsistencies between Nash's testimony and earlier statements and testimony Nash had given. Defense counsel also sought to show that Nash's testimony was influenced by concerns about imprisonment and was the result of the prosecutor's agreement to recommend commutation of Nash's sentence. The testimony of the officer was of-

fered to demonstrate that Nash's testimony at trial had not been recently fabricated as a result of a deal with the prosecutor by showing that it was consistent with an earlier statement given before the deal was made. Consequently, the statement was not hearsay, by virtue of sec. 908.01(4)(a)2, Stats.:

"(4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:
"(a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
". . .
"2. Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

Another claim of error relates to a trial court ruling limiting the scope of Haskins' cross-examination of Kathleen Lessard. On direct examination, Lessard admitted participation in an armed robbery Winters, her boyfriend, had committed. On cross-examination, defense counsel asked Lessard to disclose the identity of the robbery in which she participated. The prosecutor objected to the questioning on grounds of irrelevancy, and the trial court sustained the objection. Haskins now complains this ruling was error. "Trial courts possess considerable latitude in determining the proper scope of cross-examination, the matter resting in the sound discretion of the court." *Johnson v. State,* 75 Wis.2d 344, 361, 249 N.W.2d 593 (1977). The trial court's ruling will not be reversed unless it clearly appears that the trial court abused its discretion and that the error affected a substantial right of the complaining party and probably affected the result of the trial. *State v. Monsoor,* 56 Wis.2d 689, 701–02, 203 N.W.2d 20 (1973). Where no offer of proof was made with regard to any testimony excluded by the ruling, and where no explanation was given as to

why defense counsel thought the question was material, no abuse of discretion can be found. *State v. Groh,* 69 Wis.2d 481, 489, 230 N.W.2d 745 (1975). Because defense counsel offered neither an explanation nor offer of proof, his claim of error is without merit.

Haskins next argues that the trial court erred in permitting the prosecution to elicit the testimony of Detective Lee Ormson that it is common for arrestees to vacillate between admitting guilt and trying to extricate themselves. The testimony arose after Elwood Garner, a member of Haskins' gang, claimed several times that he did not remember the substance of a statement he gave Ormson which contradicted, at times, his testimony at trial. Garner did not deny making the statement. Ormson was called as a defense witness, and he related the substance of the statements made to him by Garner. Over objection, the trial court permitted the prosecution to elicit from Ormson the opinion testimony Haskins now claims was erroneously admitted. At trial, the defense counsel objected to the testimony solely on the ground that it was irrelevant; only that ground will be considered here. As Haskins notes in his brief, "[t]he only purpose of asking such a question is to suggest to the jury that such contraditions are commonplace and the object was to rehabilitate the deteriorated credibility of the witness." If so, the testimony is relevant on the issue of credibility. We find no merit to Haskins' claim of error.

Yet another claimed error is the trial court's refusal to give a jury instruction Haskins requested regarding the credibility of a narcotics addict. Such instruction would have been directed at two of the state's primary witnesses, Garner and Nash, who were heroin addicts at the time the crime in issue was committed. We conclude Haskins' request was properly denied (in spite of our

doubts that the issue was preserved for review). The cases which the defendant relies upon, we believe,

"plainly focused on what was the special danger arising out of the law enforcement practice of retaining paid informers prior to the commission of the offenses, generally to act as intermediaries between the police and those who will be identified by the informant. Such an informant presents particular dangers in regard to 'producing' cases, *e.g.,* including the development of claims that the transactions that evolved reflected predisposition on the part of the defendant as contrasted with entrapment." *United States v. Lee,* 506 F.2d 111, 122 (D.C. Cir. 1974).

The present case is lacking in this aspect. Garner and Nash were not paid informers retained prior to the commission of the offense who had a motive to prevaricate in order to promote their business of producing cases for the police. Consequently, we refuse to hold that the trial court abused its "wide discretion as to instructions." *State v. Williamson,* 84 Wis.2d 370, 393, 267 N.W.2d 337 (1978).

We conclude Haskins has waived any objection to the prosecutor's closing argument by his failure to move for a mistrial. *Neely v. State,* 97 Wis.2d at 54; *Davis v. State,* 61 Wis.2d 284, 286–87, 212 N.W.2d 139 (1973). In *Davis,* as here, the defendant "objected to the prosecutorial comment, [but] did not move for a mistrial." Applying well-established law, we held the objection had been waived.

Haskins argues that the trial court erred in refusing to grant him credit for pretrial incarceration.

"This issue has been disposed of by ch. 353, Laws of 1977, which was effective May 17, 1978. This legislative enactment created sec. 973.155, Stats., which provides retroactive sentence credit for offenders already in custody. In an amendment to sec. 57.06(1)(a), this

credit is made available to those who are serving a life sentence.

"If [Haskins] believes he is entitled to such preincarceration credit, his remedy is to now pursue the matter by petition to the department of health & social services as provided in sec. 973.155(5), Stats." *Larson v. State,* 86 Wis.2d 187, 200, 271 N.W.2d 647 (1978).

The defendant also claims the evidence is insufficient to support his conviction, contending that the testimony of Garner and Nash is "inherently incredible." Testimony is incredible only when it is "in conflict with the uniform course of nature or with fully established or conceded facts." *State v. Oliver,* 84 Wis.2d 316, 324, 267 N.W.2d 333 (1978). *See also: State v. Clark,* 87 Wis.2d 804, 816, 275 N.W.2d 715 (1979); *Thomas v. State,* 92 Wis.2d 372, 382, 284 N.W.2d 917 (1979). The inconsistencies and contradictions in the testimony of Garner and Nash do not render the testimony inherently or patently incredible, but simply created a question of credibility for the jury, and not this court, to resolve. *Kohlhoff v. State,* 85 Wis.2d 148, 154, 270 N.W.2d 63 (1978).

Finally, the defendant requests a new trial in the interest of justice. This is not a case where the defendant " 'should not have been found guilty,' " *Rogers v. State,* 93 Wis.2d 682, 694, 287 N.W.2d 774 (1980), quoting *Berg v. State,* 41 Wis.2d 729, 746, 165 N.W.2d 189 (1969); "[w]e believe the evidence is sufficient to dispel any doubt regarding the defendant's guilt." *Neely v. State, supra,* Slip Opinion at 16. We, therefore, decline to order a new trial.

*By the Court.*—Order and judgment affirmed.