COURT OF APPEALS
DECISION
DATED AND FILED

June 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1978-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF185

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

EDWARD L. WOODBERRY,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Edward L. Woodberry was convicted, following a bench trial, of two counts of second-degree sexual assault.  On appeal, he argues

that the circuit court erroneously exercised its discretion by admitting other-acts evidence in the form of testimony from another alleged sexual assault victim. Woodberry also argues that his defense counsel rendered constitutionally ineffective assistance by failing to adequately advise him of his right against self-incrimination and to protect that right when Woodberry testified in his own defense. We affirm.

## BACKGROUND

¶2 The State charged Woodberry with two counts of second-degree sexual assault, done by sexual intercourse with an intoxicated person incapable of giving consent, in violation of WIS. STAT. § 940.225(2)(cm) (2023-24).[1] The State alleged that on October 6, 2017, an intoxicated Helen[2] was sitting outside of a bar around closing time when Woodberry pulled up in a taxicab he was driving. Helen entered the taxi, and Woodberry drove her to a park, where he sexually assaulted her as she went in and out of consciousness. The State also claimed that Helen was throwing up and having difficulty walking prior to the sexual assault. Woodberry eventually drove Helen to his apartment and sexually assaulted her a second time that evening, and again the next morning.

¶3 According to the State, Woodberry was the major male contributor to DNA recovered from Helen's body during a sexual assault examination at a hospital. The Wisconsin State Crime Laboratory submitted Woodberry's collected DNA to the Combined DNA Index System (CODIS). Using CODIS, law

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym to refer to the victim in this case and the alleged victim in the other-acts case.

enforcement was able to match Woodberry's DNA to the DNA that was collected in three other unsolved sexual assault investigations dating back to 1999.

¶4      The State filed a motion to admit evidence from one of those prior sexual assaults that occurred in Green Bay in 2011.[3]  The State alleged in its motion that the victim in that case, Laurie, reported being sexually assaulted after attempting to walk home alone late at night.  Laurie stated that she was "very intoxicated," having a difficult time walking, and thought she was going to pass out in the street.  While Laurie was walking, a "vehicle pulled up" and a man offered to give her a ride home, which she accepted.  At some point during the drive, the man had to stop the vehicle so that Laurie could throw up.  Eventually, the man parked the vehicle and sexually assaulted Laurie.  During the assault, Laurie yelled, and the man stated, "Shut up or else I'm gonna hurt you."  For his alleged assault of Laurie, the State charged Woodberry in a separate case in Brown County with second-degree sexual assault in violation of WIS. STAT. § 940.225(2)(a) (sexual intercourse without consent by use or threat of force or violence).

¶5      The State argued that the 2011 assault was relevant to Woodberry's intent and motivation to assault intoxicated women and his knowledge that Helen was too intoxicated to consent.  Woodberry's defense counsel argued that because a trial had not yet occurred for the 2011 assault, admitting evidence of the assault would "create a trial within a trial."  Woodberry's counsel further argued that any

---

[3] Initially, the State also moved to admit evidence relating to other sexual assaults allegedly committed by Woodberry, including the facts underlying two 1999 assaults.  The circuit court expressed skepticism over the admissibility of these instances as other acts, and the State ultimately did not attempt to admit them.

3

probative value in admitting the 2011 assault would be substantially outweighed by the danger of unfair prejudice because it would unduly erode Woodberry's presumption of innocence and frame him as a "serial rapist."

¶6   The circuit court granted the State's other-acts motion following a nonevidentiary hearing.  The court found that the State was offering the evidence for a permissible purpose under WIS. STAT. § 904.04(2)(a); that the evidence was relevant, given the similarities between the cases, to prove Woodberry's knowledge that Helen was incapable of giving consent and that he intended to have sexual intercourse with Helen while she was incapable of giving consent; and that the evidence was not substantially outweighed by the danger of unfair prejudice, particularly because the matter was being tried to the court, not a jury.[4] *See State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998).   Both Helen and Laurie later testified at the bench trial.

¶7   Woodberry also testified at trial following two separate colloquies with the circuit court.  During the first colloquy, which was conducted at the end of the first day of trial, the court asked Woodberry several questions, including whether he understood that if he chose to testify, the State could cross-examine him and that anything he testified to could be used against him.  Woodberry stated that he understood.  On the second day of trial, the court asked Woodberry whether he had a chance to talk with his defense counsel about testifying, to which Woodberry responded that he had.

---

[4] Prior to the other-acts motion hearing, Woodberry waived his right to a jury trial and requested a bench trial.

4

¶8     On cross-examination, the State asked Woodberry about the 2011 assault, at which point defense counsel objected, arguing that he did not "open[] the door to" that issue on direct examination. The circuit court overruled the objection, noting that "Woodberry can be cross-examined on any relevant issue in the case." Woodberry stated that he did not "recall" seeing "a woman passed out on the side of the road" in 2011 in Green Bay, he did not "recall" being in Green Bay at any point in 2011, he was "not sure" whether he lived in Green Bay during that period, and he did not remember having "sexual intercourse" with Laurie at any point in time. Woodberry testified that he had been diagnosed with "dementia" "several years ago."

¶9     The circuit court found Woodberry guilty of the crimes charged and imposed aggregate sentences of 16 years of initial confinement followed by 10 years of extended supervision.

¶10    In issuing the guilty verdicts, the circuit court made several findings of fact. Pertinent to this appeal, the court found aspects of Helen's testimony to be "honest," "more credible," and "believable." Conversely, the court stated that it "was frankly struck by the inconsistency" of Woodberry's testimony, and it found him "not credible." Furthermore, the court found that there was probative value in Laurie's testimony, particularly given the DNA evidence introduced. The court stated that because Laurie's testimony showed that Woodberry had sexual "intercourse with an intoxicated person who … indicated [a] lack of consent" through her words and actions, it was more likely Woodberry would "have intercourse with an intoxicated person unable to give consent," i.e., Helen.

¶11    Woodberry filed a motion for postconviction relief. He argued, among other things, that his defense counsel was constitutionally ineffective by

5

failing to advise him of his Fifth Amendment right not to incriminate himself with respect to the 2011 assault. More specifically, Woodberry asserted that his trial counsel failed to (1) advise Woodberry that he could be compelled to answer questions relating to the 2011 assault should the circuit court find that the matter was "reasonably related to the subject matter of his direct examination"; (2) file a motion in limine in order to obtain a court ruling on whether the 2011 assault was reasonably related to this case; and (3) object to the State's cross-examination related to the 2011 assault on the ground that the incident was not reasonably related to this case for purposes of the Fifth Amendment. *See Neely v. State*, 97 Wis. 2d 38, 45, 292 N.W.2d 859 (1980); U.S. CONST. amend. V.

¶12 Following a *Machner*[5] hearing, the circuit court denied Woodberry's motion for postconviction relief. The court found that it was Woodberry's decision to testify and that defense counsel did not perform deficiently. Even if defense counsel did perform deficiently, the court determined that any deficient performance was not prejudicial because Woodberry did not incriminate himself when responding to questions about the 2011 assault.

¶13 Woodberry now appeals, challenging the circuit court's decisions granting the State's other-acts motion and denying his postconviction motion on the ineffective assistance of counsel issue.

---

[5] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

6

## DISCUSSION

### I. Other-acts evidence

¶14 Generally, "[e]vidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion" and "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(1), (2)(a). Thus, § 904.04 "precludes the admission of character" evidence to show "an accused's propensity to commit the act charged." *Sullivan*, 216 Wis. 2d at 783.

¶15 However, evidence of other crimes, wrongs, or acts may be admitted "when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." WIS. STAT. § 904.04(2)(a). Other-acts evidence is admissible if (1) it is offered for a permissible purpose under § 904.04(2)(a); (2) it is relevant under WIS. STAT. § 904.01; and (3) its probative value is not substantially outweighed by the risk of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence under WIS. STAT. § 904.03.[6] *Sullivan*, 216 Wis. 2d at 771-73.

---

[6] The circuit court did not apply the greater latitude rule to its analysis because it questioned whether that rule would apply to the facts of this case. *See* WIS. STAT. §§ 904.04(2)(b)1., 939.615(1)(b). Neither party raises this decision on appeal, and we will not consider it further.

¶16 We review a circuit court's decision to admit other-acts evidence for an erroneous exercise of discretion. *State v. Seaton*, 2024 WI App 68, ¶14, 414 Wis. 2d 415, 16 N.W.3d 20. "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." *Id.* (citation omitted).

¶17 Woodberry contends that evidence of the 2011 assault should not have been admitted at his bench trial because the assault was too remote in time from the charges in this case and there were "dissimilarities" between Helen's assault and Laurie's assault—namely, that Woodberry did not threaten to use force against Helen like he did against Laurie and that the State charged Woodberry in Laurie's assault with violating WIS. STAT. § 940.225(2)(a), not (2)(cm). Woodberry maintains that "[t]hese were two very different crimes" requiring the State to prove "different elements." As a result, Woodberry asserts that any probative value of the evidence from Laurie's assault was outweighed by unfair prejudice and confusion of the issues caused by her testimony. More particularly, Woodberry argues that the probative value of Laurie's testimony was "outweighed by the sympathies it would elicit for what happened to her" and "by the arousal in the trier of fact's sense of honor [sic]." He further argues that Laurie's testimony provoked the trier of fact's "instincts to punish Woodberry for what happened to Laurie … rather than … adjudicating what happened … to Helen."

¶18 Unfair prejudice occurs when the proffered other-acts "evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Sullivan*, 216 Wis. 2d at 789-90. In other words, we consider "the potential harm in a jury's concluding that because an

actor committed one bad act, he [or she] necessarily committed the crime with which he [or she] is now charged." *Id.* at 790 n.19 (citation omitted). "The evidence's probative value largely turns on the relevancy analysis from step two under *Sullivan*." *State v. Dorsey*, 2018 WI 10, ¶54, 379 Wis. 2d 386, 906 N.W.2d 158 (citation omitted). "If the probative value is close to or equal to its unfair prejudicial effect, the evidence must be admitted." *Id.* (citation omitted). Moreover, when other-acts evidence is relevant and offered for a proper purpose, it is the *opponent* of the proffered evidence who has the burden to demonstrate that its probative value is substantially outweighed by the other considerations under the third prong of the *Sullivan* analysis. *State v. Payano*, 2009 WI 86, ¶80 & n.18, 320 Wis. 2d 348, 768 N.W.2d 832.

¶19 We disagree with Woodberry that the circuit court erroneously exercised its discretion by concluding that evidence of the 2011 assault was admissible. The circuit court acknowledged that there were "obviously" "some differences" between the assaults. But it also reasonably found that the assaults were similar. The assaults involved Woodberry picking up young women up in a vehicle after offering them a ride, taking the women to separate locations, and sexually assaulting the women after witnessing them vomit and demonstrate other signs of intoxication.

¶20 In addition, as the circuit court reasonably determined when it granted the State's motion, the evidence was introduced to show Woodberry's knowledge that Helen was incapable of giving consent—given her similar intoxication level to Laurie as evidenced by vomiting and other signs of intoxication—and that Woodberry intended to have sexual intercourse with Helen while she was incapable of giving consent. Likewise, the other-acts evidence was also clearly relevant to Woodberry's motive to offer Helen a ride and have sexual

9

intercourse with her regardless of her intoxication level. *See State v. Hurley*, 2015 WI 35, ¶¶71-74, 361 Wis. 2d 529, 861 N.W.2d 174.[7]  Accordingly, the striking similarities between the alleged 2011 assault and the assault against Helen "make the other-acts evidence highly probative" as to Woodberry's motive, intent, knowledge, and credibility. *See Seaton*, 414 Wis. 2d 415, ¶37.

¶21    The fact that Woodberry allegedly threatened Laurie does little to change the significance of the notable similarities between the 2011 assault and those perpetrated against Helen.  The circuit court could reasonably determine that the assaults, and the circumstances surrounding them, were extremely similar despite the fact that the State charged one case as sexual assault by use or threat of force or violence.  Moreover, as the circuit court noted, the matter was tried to the court and not to a jury and, therefore, the evidence's ability to improperly influence or confuse the factfinder was limited.[8]  A circuit court judge "is presumed to know what testimony is competent and will disregard extraneous matter," *State v. Cathey*, 32 Wis. 2d 79, 90, 145 N.W.2d 100 (1966), and Woodberry has failed to rebut that presumption on appeal.  *See also State v. Mullis*, 81 Wis. 2d 454, 461, 260 N.W.2d 696 (1978) (concluding that the effect of

---

[7] Although the circuit court did not so expressly state, the evidence was further relevant to assessing Helen's and Woodberry's credibility, which was consequential in the case given the issues of consent and impairment. *See State v. Gutierrez*, 2020 WI 52, ¶33, 391 Wis. 2d 799, 943 N.W.2d 870.

[8] In reaching our conclusion that the circuit court did not erroneously exercise its discretion by admitting the other-acts evidence, we do not hold as a blanket rule that a bench trial renders the third step of the *Sullivan* analysis obsolete, as Woodberry argues that the State posits. *See State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998).  We agree with Woodberry that the other-acts evidence was prejudicial.  However, for reasons explained in this opinion, Woodberry has failed to meet his burden to show that the evidence was *unfairly* prejudicial or that it confused the court during the trial.  *See id.*

a possible evidentiary error was harmless because the trial was to the court, not a jury).

¶22    In short, the State proffered relevant evidence of the 2011 assault for several permissive purposes. This evidence was not unfairly prejudicial, and it did not confuse the issues for the circuit court at the bench trial.

## II. Ineffective assistance of counsel

¶23    To demonstrate that counsel was constitutionally ineffective, a defendant must prove both that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the defendant fails to satisfy either prong, we need not consider the other." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.

¶24    "To establish that deficient performance was prejudicial, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, ¶39 (citation omitted). "Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact." *Id.*, ¶37. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." *Id.*

¶25    "It is well-established that a defendant who takes the stand in his [or her] own behalf cannot then claim the privilege against cross-examination on

11

matters *reasonably related* to the subject matter of his [or her] direct examination." *Neely*, 97 Wis. 2d at 45 (emphasis added). Here, Woodberry argues that his defense counsel performed deficiently by failing to file a motion in limine to address whether the State's questions on cross-examination were "reasonably related to the subject matter of his direct examination." *See id.*

¶26 In support of his position on this issue, Woodberry cites the following excerpt from *Haskins v. State*, 97 Wis. 2d 408, 415-16, 294 N.W.2d 25 (1980), as if it were settled law:

> [A] criminal defendant who desires to testify but fears that questions might be asked on cross-examination which would incriminate him [or her] in a subsequent criminal proceeding should make a motion in limine. At that point the trial court could determine the extent of the defendant's waiver and the scope of cross-examination and advise both the defendant and the state, in advance, of what would happen if the defendant took the stand.

¶27 However, the *Haskins* court was merely identifying in this excerpt what the court of appeals had concluded in its decision in *Neely v. State*, 86 Wis. 2d 304, 272 N.W.2d 381 (Ct. App. 1978), *aff'd in part, disapproved in part*, 97 Wis. 2d 38, 292 N.W.2d 859 (1980).[9] *Haskins*, 97 Wis. 2d at 415-16. The supreme court went on to state that the "opinion of the court of appeals pose[s] difficulties" because "the issue of privilege and its possible waiver cannot be determined with any certainty until cross-examination begins." *Id.* at 416. The court further stated that a more "informative method of raising" Fifth Amendment issues in this context "would be for the defendant to take the stand and appeal a

---

[9] The supreme court consolidated the *Haskins* case "for purposes of disposition with *Neely v. State*, 97 Wis. 2d 38, 292 N.W.2d 859 (1980), which involved the same crime and raised related issues." *Haskins v. State*, 97 Wis. 2d 408, 409, 294 N.W.2d 25 (1980).

subsequent conviction if following a claim of privilege he [or she] were ordered to answer the prosecutor's questions on cross-examination. Only in this way may the defendant's claim be presented to a reviewing court in a concrete, factual context." *Id.* at 417. Because the supreme court has clarified that there is not an affirmative obligation to raise the issue in a motion in limine, defense counsel could not be found to have performed deficiently by failing to file a motion in limine seeking to limit Woodberry's cross-examination.

¶28 Next, we assume without deciding that Woodberry's defense counsel performed deficiently by failing to advise Woodberry that he could be compelled to answer questions relating to the 2011 assault should the circuit court find that the State's questions were reasonably related to the subject matter of his direct examination. We further assume without deciding that counsel performed deficiently by failing to object to the State's questions regarding the 2011 assault in order to obtain a ruling on whether those questions were reasonably related to the subject matter of Woodberry's direct examination.

¶29 Even with these assumptions, Woodberry has failed to establish that his defense counsel's assumed deficient performance was prejudicial. Woodberry correctly notes that the circuit court would have been prohibited from drawing a negative inference from Woodberry's invocation of his Fifth Amendment right not to answer questions regarding the 2011 assault. *See* WIS. STAT. § 905.13(1). He further contends that, "[o]n the other hand, the circuit court could draw all manner of negative inferences from Woodberry's response[s] to questions about Laurie's testimony," including from "his body language and demeanor," to find that he was lying about having no recollection.

13

¶30 However, as the circuit court stated in its ruling denying these postconviction claims, Woodberry did not incriminate himself when responding to questions about the 2011 assault, and Woodberry fails to explain how invoking the Fifth Amendment would have benefited him at trial. Even if Woodberry had invoked his Fifth Amendment privilege not to testify regarding the 2011 assault, the court would have been in substantially the same position as it was when Woodberry stated that he did not recall anything about Laurie or the assault. This reasoning is particularly true given the uncontroverted DNA evidence showing that Woodberry had sex with Helen, and the court's explicit finding that it relied on the DNA evidence to find that Woodberry likely sexually assaulted Helen. Woodberry invoking the Fifth Amendment would not have changed this finding. Thus, it is not reasonably probable that the court would have found Woodberry credible, and Helen incredible, had he invoked the Fifth Amendment when questioned about the 2011 assault, rather than answering those questions in the manner he did at trial.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.