CLAWSON, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 15—November 7, 1906.*

*False pretenses: Statute construed: Promissory note is "property:"*
*Essentials of offense: Evidence.*

1. A promissory note is within the meaning of the words "other property" in sec. 4423, Stats. 1898, making criminal the obtaining by false pretenses of "money, goods, wares, merchandise, or other property." DODGE, J., dissents.

2. The offense of obtaining property by false pretenses was not committed if the property obtained was only such as the accused was legally entitled to receive, even though he obtained it by means of falsehood. In such a case two essentials of the offense, viz., an intent to defraud and an actual fraud committed, are lacking.

3. The evidence in this case is *held* to show that at the time defendant obtained from one H. a promissory note for $500 he was entitled to demand and receive from H. that amount of money as a commission for finding a purchaser for a vessel, and hence that in obtaining such note defendant was not guilty of the offense of obtaining property by false pretenses.

ERROR to review a judgment of the municipal court of Brown county: N. J. MONAHAN, Judge. *Reversed.*

Information charging the defendant with obtaining a promissory note by the false representation that he had sold for $7,500 for the prosecuting witness a boat owned by the latter to one H. H. Hayward, a man who resided at Elks Rapids, Michigan, and was worth $100,000, the information charging that the statement that he had so sold the boat and that H. H. Hayward lived at Elks Rapids, Michigan, was false, as defendant well knew.

Evidence was given that the prosecuting witness, Hagerty, being half owner of a certain boat, agreed with defendant in writing to give him a commission of $500 if he "makes the sale, or is instrumental in making sale, of the steamer Belle at $7,500." On the following day, June 19th, *Clawson* produced a telegram dated Chicago and signed H. H.

Hayward, directing him to close deal at $7,500, provided clear title was made in Hayward's name by Wednesday and placed in Kellogg National Bank. On the following day he asked for his commission, and Hagerty inquired as to who Hayward was, and, as he testified, was informed that he was a man living at Elks Rapids, Michigan, and was worth about $100,000. Whereupon, relying upon this statement, Hagerty gave to the defendant his promissory note payable to the latter or order, in thirty days, for $500, and wrote on the foot of it below his signature the following: "Due July 20th. This note is given in accordance with agreement with *Mr. Clawson.*" Evidence was offered that no such man lived at Elks Rapids, Michigan. There was evidence tending to prove that Hagerty was in some trouble with his partner as to accounts of the vessel and their respective interests, and was not able to produce a good bill of sale Wednesday, the 22d of June, as specified in that telegram. There was evidence of his attempting to buy out his partner at a less price and of his having commenced foreclosure and asking *Clawson* to attempt to get postponement for a few days, and the latter produced in response thereto a telegram dated Chicago, June 23d, signed Hayward, as follows:

"Perfect title in my name and place same in charge of Kellogg Bank. You inspect same, advise me by Friday. Will not entertain further delay."

On Friday Hagerty was still in controversy with his partner and did not produce at the bank the bill of sale, although he testifies that if the money had been there he could have obtained it. Defendant testified, with confirmation by another witness, that at that time he had received and had in his possession a certified check for $7,500 from Hayward, payable to Kellogg National Bank, which, under his directions from Hayward, he could only deliver when satisfactory conveyance was placed with that bank, and, no such conveyance being so deposited, he returned the check to Hayward on the follow-

ing day. Hagerty, on July 8th, received a letter signed H. H. Hayward, care of Courtland Hotel, Chicago, offering to complete the purchase on the terms named if title were made by August 1st. To this Hagerty replied, but the substance of his reply is not in evidence. Neither party has since been able to find Hayward, the Courtland Hotel, where he made his headquarters in Chicago, having burned shortly after this time. The fact of the existence and apparent responsibility of H. H. Hayward was testified to by two Chicago witnesses, and the presence of such a man in company with the accused on the 17th of June inspecting the boat in question was also proved.

After motion to direct a verdict in favor of the defendant, a verdict of guilty was found by the jury, and, after motion for a new trial, judgment and sentence were pronounced, to which defendant sued out writ of error.

*M. E. Davis,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *A. C. Titus,* assistant attorney general, and oral argument by *Mr. Titus.*

DODGE, J.   1. At the very threshold of this case we are confronted by a very important and doubtful question of law, affecting the general scope of this part of the criminal law of this state, on which we have received no aid from counsel on either side, and upon which the field of at least suggestive decisions is quite extended, and has involved us in much labor and research. That question is whether our statute (sec. 4423, Stats. 1898) makes criminal the obtaining by false pretenses a promissory note or other evidence of indebtedness. Our statute, adopted originally from Massachusetts, makes criminal only the obtaining of "money, goods, wares, merchandise, or other property." The Massachusetts statute was substantially an adoption of the English acts of 30 Geo. II. cap. 24, and 52 Geo. III. cap. 64. Since the respective adoptions the statutes have been modified both in

England and Massachusetts by an addition to the list of property which might be the subject of the crime, of apt words to describe evidences of indebtedness, and in the overwhelming majority of other states the statutes defining the crime of false pretenses either nominate expressly "evidence of indebtedness" or do not, like ours, contain such a category of tangible material property as to suggest, by *noscitur a sociis*, a limitation of the final general words to similarity to such a preceding category. We have been unable to find either in England or in Massachusetts a decision whether evidences of debt might be the subject of obtaining goods under false pretenses during the period that their statutes failed to cover them specifically.

Our own statute was first considered in *State v. Green*, 7 Wis. 676, wherein the charge was of obtaining a check, which, however, seems to have been cashed, so that the accused did in fact obtain the money, although that fact seems not to have been charged in the indictment. No question was raised or considered by the court as to the sufficiency of this allegation to satisfy the clause of the statute, the indictment being held bad on other grounds. The next case was *State v. Kube*, 20 Wis. 217, which was a charge of obtaining "a package of money containing the sum of $60 in bank bills." The court held, not that bank bills were included in the expression "other property," but were described by the word "money;" for the reason that such word, in reasonable and colloquial use, signified whatever customarily passed current as a medium of exchange and commerce, and was not necessarily confined to coined metals. The next case of significance is *State v. Black*, 75 Wis. 490, 493, 44 N. W. 635, where the ultimate decision was that the obtaining of board and lodging, or, as the court characterized it, a mere credit, was not penal under this section. But it was there said:

"We are to remember that it is a criminal statute we are construing. It should not be so construed as to multiply crimes, unless required by the context. The word 'property'

is, in many cases, construed to include 'things in action and evidences of debt. Subd. 3, 4, sec. 4972, R. S. 1878. But the words 'other property,' in the statute quoted, must, under the familiar rule, *noscitur a sociis,* be limited to such tangible classes of property as are therein previously enumerated; that is to say, 'money, goods, wares, merchandise, and other property' of that description."

In *Bates v. State,* 124 Wis. 612, 103 N. W. 251, the holding was that a charge of obtaining money was not satisfied by proof of obtaining drafts by one bank on another, although in course of discussion it was said that for the obtaining of such drafts the defendant could be prosecuted. That was said upon the authority of *Comm. v. Coe,* 115 Mass. 481, overlooking the distinction between the present statutes of that state and our own.

This seems to be the extent of decision on the subject in Wisconsin, and, as a result, we may fairly consider the question an open one here. The words quoted from *State v. Black* are perhaps a more deliberate and authoritative expression of the view of this court as to the true construction of this statute than the remark dropped in *Bates v. State,* but in both the court was speaking *arguendo* and not directly considering the question whether the words "other property" were intended by the legislature to include such an evidence of debt as a formal promissory note, bank draft, or a check, all of which are doubtless generally included within the word "property," when used in other statutes. Subd. 3, 4, sec. 4972, Stats. 1898; *Storm v. Cotzhausen,* 38 Wis. 139; *State v. Coyle,* 41 Wis. 267; *Wayland Univ. v. Boorman,* 56 Wis. 657, 14 N. W. 819.

In other states, where the statutes do not by clear expression include bills and notes, the decisions are in favor of their inclusion under such expressions as "other property," or "other valuable thing," or "valuable effects." *State v. Tomlin,* 29 N. J. Law, 13; *State v. Thatcher,* 35 N. J. Law, 445, 453; *State v. Switzer,* 63 Vt. 604, 607, 22 Atl. 724; *People*

*v. Stone,* 9 Wend. 182, 190; *State v. Patty,* 97 Iowa, 373, 377, 66 N. W. 727. In the *Thatcher* and *Stone Cases* the court reaches this conclusion by somewhat dogmatically de-claring that the intention of the legislature was obviously to include all things which might be the subject of larceny, and hence that the words "or other property" must be viewed as an intended addition to the more specific designations of property preceding them. In other words, that the rule *nos-citur a sociis* should not be applied to restrain the concluding words from their full effect. In Iowa the application of the words "other property" to evidences of indebtedness is pred-icated on a provision of the Code similar to our sec. 4972, to the effect that property includes personal and real property, and personal property includes evidences of debt and things in action—an argument which has generally been denied full effect, for, uniformly, "other property," in these statutes, has been held not to include real estate. *State v. Burrows,* 11 Ired. Law, 477; *Comm. v. Woodrun,* 4 Clark (Pa. L. J. Rep.) 207 (*362); *People v. Cummings,* 114 Cal. 437, 46 Pac. 284.

The rule *noscitur a sociis* is, of course, only a rule of con-struction, although among those most frequently applied and perhaps most in accord with the real fact as to attempts to express in words those things as to which it was intended to legislate. If, however, the court is convinced that a general *et cætera* expression is appended to a list of specific designa-tions with the intent to broaden the same, it is, of course, its duty to give such words that effect. "Other property," liter-ally, is, of course, broad enough to include a promissory note or bill of exchange; hence, unless a court is convinced by the association of such words with others that they are used to express some more limited conception, there is ample justifi-cation for applying them to the full extent of their literal meaning. Doubtless there is cogent argument that such ar-ticles of property as those now under consideration are as

likely to be the objects of cupidity, are as likely to be obtainable by misrepresentation, as any other forms of personal property, and that the injury to be done the defrauded person, and perhaps others, is, if anything, more imminent than in the case of tangible chattels. From considerations such as these, after giving due weight to the expression hereinbefore quoted from *State v. Black,* 75 Wis. 490, 44 N. W. 635, the court has concluded that the true intention of the legislature will be best given effect by holding that a promissory note is within the meaning of the words "or other property" in sec. 4423—a conclusion with which, I may be permitted to say, without a formal dissenting opinion, my personal views do not accord.

2. The trial court correctly instructed the jury that the offense of obtaining property by false pretenses involved at least four essential elements: (1) There must be an intent to defraud; (2) there must be an actual fraud committed; (3) false pretenses must be used for the purpose of perpetrating the fraud; and (4) the fraud must be accomplished by means of the false pretenses made use of for that purpose. *State v. Clark,* 46 Kan. 65, 26 Pac. 481; *State v. Palmer,* 50 Kan. 318, 324, 32 Pac. 29; *People v. Wakely,* 62 Mich. 297, 28 N. W. 871; *Owens v. State,* 83 Wis. 496, 53 N. W. 736. In application of this rule it has been held that the first two of these elements do not exist where the property sought to be obtained, and in fact obtained, was only such as the accused had a perfect and complete legal right to receive. *Rex v. Williams,* 7 Car. & P. 354; *Comm. v. McDuffy,* 126 Mass. 467; *Comm. v. Harkins,* 128 Mass. 79, 82; *People v. Thomas,* 3 Hill, 169; *State v. Hurst,* 11 W. Va. 54; *Comm. v. Thompson,* 2 Clark (Pa. L. J. Rep.) 33 (*250); *Comm. v. Henry,* 22 Pa. St. 256. The special application in most of these has been to the obtaining by means of falsehood merely the payment of money to which the accused was legally entitled, it being held that thereby no fraud is worked

upon the other party, and no intent to defraud can be inferred from such act.

Applying that principle to the present case, we have, without hesitation, reached the conclusion that the proof in the record is conclusive that at the time the defendant obtained the $500 note from Hagerty the latter owed him that amount of money; that, if defendant had sued Hagerty for $500 commissions for making sale of his vessel, any court must, upon the same evidence, have rendered judgment in the former's favor. There is, of course, no dispute that Hagerty agreed to pay the defendant $500 for making sale. The evidence is overwhelming and undisputed that defendant found a customer ready, able, and willing to take the property at the price fixed by the owner, at $7,500, and that Hagerty accepted such customer and the condition that he was to pay only when clear title was deposited with a specified bank. Thereafter Hagerty failed, for reasons of his own, to make out such title. He has offered some proof that he could have made it out any time had the money first been deposited. But the prior deposit of the money was not in accordance with the terms of the sale, and he refrained from perfecting title apparently by reason of his desire to acquire his partner's half interest at some less rate, either by foreclosure of a mortgage which he held thereon or by purchase. It matters not, however, what reasons controlled Hagerty. It suffices that he did, in fact, fail to perform on his part the terms of the sale effected by the defendant, to which Hagerty had agreed. True, some of these facts depend upon the testimony of the defendant, although in many respects he is confirmed by testimony of others. But there is nothing in the case to throw his testimony either in conflict with other facts or evidence or under suspicion. Evidence was offered by the defendant of his good character, standing in the community, and financial responsibility, whereby the door was opened to the prosecution to attack him in those respects. No evidence

was offered that he was other than he described himself. There is a vague suggestion in argument that the nonappearance of the proposed purchaser, Hayward, at the time of trial, and defendant's inability to produce him, justified a suspicion that he was a myth. But it must be remembered that approximately a year had been allowed to elapse between the obtaining of the note and any complaint by Hagerty, and that during that time the hotel where Hayward made his headquarters, and where alone defendant had known him, had gone out of existence, and defendant had no starting point from which to search for the man. No reason is suggested for this delay on Hagerty's part. The note was protested against him only one month after it was given as being already transferred to a third party. The defendant was at least monthly in Green Bay, where he was well known and easy of access, either for demand of explanation, or for arrest if Hagerty believed him guilty of the crime now charged. Neither was there anything in defendant's conduct immediately following the transaction to justify suspicion. He remained at Green Bay in contact with Hagerty for nearly a week after he received the note. He at first used it only as collateral security for a small sum of money, so that it was open, in the main, to any defenses that Hagerty might have. With this uncontradicted evidence that defendant obtained nothing from the prosecutor except what he was entitled to and which should have been given him upon demand without the representations charged as false in the information, it is clear that the evidence did not establish either that Hagerty was defrauded or that the representations were made with intent to defraud. It was error to refuse defendant's motion for the direction of verdict in his favor.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.