Hillsborough
No. 83-154

THE STATE OF NEW HAMPSHIRE

v.

JOHN KELLY

September 27, 1984

*Gregory H. Smith,* attorney general (*Jeffrey R. Howard,* assistant attorney general, on the brief and orally), for the State.

*Emile R. Bussiere P.A.,* of Manchester (*Richard J. Walsh* on the brief and orally), for the defendant.

BROCK, J.   The defendant, John Kelly, was convicted of theft by deception, RSA 637:4, in the Superior Court (*Goode,* J.) on January 20, 1983. He was sentenced to the New Hampshire State Prison for a term of not more than four years nor less than two years, and fined $1,000 plus penalty assessment. Kelly alleges that the court erred (1) in refusing to permit him to introduce evidence that the value of the property received by the alleged victim was greater than the consideration paid, and (2) in ruling that the State could use three of his prior convictions to impeach his credibility, should Kelly decide to testify in his own defense. For the following reasons, we reverse and remand.

The pertinent facts, established at trial, are as follows. In August 1981, Raymond and Jamy Sarrette exchanged their 1976 Oldsmobile Cutlass with Kelly, an automobile dealer, for a Volkswagen and

cash. At the time of the trade-in, the odometer of the Cutlass registered over 82,000 miles. On September 10, 1981, Kelly sold the same Cutlass to Joseph Baranski for $2,200 in cash and a truck that the parties stipulated was worth $550. The odometer, at this time, read 52,881 miles. Kelly, in Baranski's presence, filled out the certificate of title, typing in 52,881 as the actual odometer mileage. Baranski testified at trial that mileage was an important consideration in buying an automobile and that he would not have paid $2,750 if he had known that the actual mileage on the Cutlass was more than 82,000.

## I. *Exclusion of evidence as to value of property received by victim*

At trial, Kelly claimed that no crime had been committed because the alleged victim suffered no pecuniary loss or deprivation. The defendant sought to introduce evidence showing that the Cutlass was worth more than the $2,750 paid by Baranski. Specifically, he wanted to introduce testimony by an agent of Baranski's insurance company that, in September 1981, the fair market value of the Cutlass was greater than $2,750 notwithstanding that the true mileage was greater than the odometer showed. In fact, the insurance company paid the alleged victim three thousand dollars for the car as a total loss. The superior court ruled that such evidence was irrelevant to the crime of theft by deception.

RSA 637:4, I, theft by deception, provides that a "person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." "Purpose to deprive" is defined in pertinent part in RSA 637:2, III(a) as having "the conscious object . . . [t]o withhold property permanently or for so extended a period or to use under such circumstances that a substantial portion of its economic value, or of the use and benefit thereof, would be lost . . . ." In the situation where property is exchanged between two willing parties, even if fraud is committed, the deceiving party can only intend to deprive the victim of the value of the victim's property that exceeds the value of the property which the victim receives in the exchange. *Cf. People v. McCoy*, 75 Mich. App. 164, 175–78, 254 N.W.2d 829, 834–35 (1977) (pecuniary loss to victim must be shown). The value of the property received by Baranski is therefore relevant evidence and should have been admitted.

Furthermore, beyond this error, we do not believe that the legislature intended the statutory offense of theft by deception, potentially punishable as a Class A felony, to reach situations like the present one, where the alleged victim, in a bargaining exchange,

has, if the evidence as to the value of the Cutlass is believed, received value in excess of the consideration he paid. RSA 637:4, on its face, appears applicable to the facts presented in the case at bar. *See State v. Harlan*, 116 N.H. 598, 364 A.2d 1254 (1976). However, the potential penalty to the defendant is so severe when compared to the "loss," if any, sustained by the victim, that we decline to find the statutory offense of theft by deception applicable in situations where the "victim" receives value in excess of the consideration paid, absent a clearer indication of legislative intent. *See State v. Etzweiler*, 125 N.H. 57, 480 A.2d 870 (1984). *State v. Harlan supra*, to the extent that it is inconsistent with the holding in this opinion, is hereby overruled.

The State must establish, therefore, that the victim suffered a net loss as well as the amount of that loss. *Cf.* RSA 262:17 (Supp. 1983) (Odometer Tampering; Certification of Mileage). The State must prove the value of both the consideration received and the consideration paid. The defendant would, of course, be free to produce his own testimony as to the value of either. The trier of fact will make the final determination. *See State v. Moody*, 113 N.H. 191, 192–93, 304 A.2d 374, 375 (1973). In this case, if the trier of fact finds that the Cutlass was worth more than $2,750, a verdict of not guilty must be returned. If the Cutlass was worth less than $2,750 then the difference will determine the grade of the offense. *See* RSA 637:11 (Supp. 1983).

II. *Use of prior convictions*

The defendant also alleges that the superior court erred in ruling that the State could use three of his prior convictions to impeach his credibility. These include a 1979 superior court conviction for the sale of a narcotic drug (*see* RSA 318-B:2 (Supp. 1983)), a 1978 conviction in the United States District Court for the District of New Hampshire for "Unlawful Acts: Firearms" (18 U.S.C. § 922(a)(5)), and a 1974 conviction in the Durham District Court for theft by unauthorized taking (RSA 637:3). As a result of this ruling, Kelly argues, his right to testify on his own behalf was impermissibly chilled.

The defendant contends that the convictions may not be used by the State because (1) the records do not contain an acknowledgment of rights form executed by the defendant and (2) the convictions are too remote in time. Kelly's complaint regarding the lack of an acknowledgment of rights form with respect to both State convictions merits little discussion. A defendant only completes an acknowledgment of rights form when pleading guilty and waiving

those rights. The record includes copies of the 1979 and the 1974 convictions, each of which indicates that the defendant pled *not guilty* to the charge and was represented by counsel.

With respect to the 1978 federal charge, the record indicates that Kelly pled guilty and that he was represented by counsel. The defendant argues that, notwithstanding the fact that the record indicates that he had counsel, the State has the burden of showing the execution of a valid acknowledgment and waiver by the defendant. Kelly has not alleged that his plea in the United States District Court in 1978 was not made voluntarily and intelligently, but rather has alleged merely that the record of conviction is deficient in that the State must produce a validly executed acknowledgment of rights form before using the conviction for impeachment purposes.

Kelly's argument fails. First, the State has no burden of showing that a guilty plea met constitutional standards, unless and until a defendant alleges the specific manner in which the plea was involuntary or made without understanding. *State v. Desbiens*, 117 N.H. 433, 374 A.2d 651 (1977). Second, the prerequisite for the admission of a prior conviction for impeachment purposes is proof that the prior conviction was either counseled or subject to a valid waiver of counsel. *State v. Robinson*, 123 N.H. 532, 535, 465 A.2d 1201, 1203 (1983); SUPER. CT. R. 68. That requirement was satisfied in this case.

Finally, the defendant argues that the convictions were too remote in time to be admissible. "The determination of remoteness is within the sound discretion of the trial court." *State v. Staples*, 120 N.H. 278, 283, 415 A.2d 320, 323 (1980). Because we are remanding for a new trial based on the trial court's error in excluding evidence of the value of the property received by Baranski, we decline to rule on this alleged abuse of discretion. We note that subsequent to the defendant's trial in this case, we made clear in *State v. Robinson*, 123 N.H. at 535-36, 465 A.2d at 1203, that "trial judges should make affirmative findings supportable on the record that each specific prior conviction sought to be introduced for impeachment was counseled or based on a constitutionally proper waiver *and, further, that the 'probative value of a particular conviction outweighs its inherent prejudice'*" (quoting *State v. Staples*, 120 N.H. at 285, 415 A.2d at 324) (emphasis added). This instruction is binding upon the court at any retrial.

*Reversed and remanded for a new trial.*

BATCHELDER and SOUTER, JJ., concurred in part and dissented in part; the others concurred.

BATCHELDER, J.,with whom SOUTER, J., concurs, concurring in part and dissenting in part: The majority requires that, in order to obtain a conviction for theft by deception, the victim must suffer some pecuniary loss. I disagree and would uphold the conviction.

The statute does not require actual deprivation or loss to the victim. Rather, the gravamen of the offense is that the defendant knowingly made a false impression with the intent to deceive and obtained property of another as a consequence thereof. In this case, the defendant created the false impression that the odometer had registered 52,881 miles rather than the actual 82,000 miles, and knew that the impression was false. Relying on this misrepresentation, the victim parted with and the defendant obtained $2,750 of the victim's property.

Theft by deception is committed when the victim parts with property in reliance on a false representation. It is immaterial that the victim received nothing, some value of greater value in return.

> "A man is none the less cheated out of his property, when he is induced to part with it by fraud, because he gets a quid pro quo of equal value. It may be impossible to measure his loss by the gross scales available to a court, but he has suffered a wrong; he has lost his chance to bargain with the facts before him. That is the evil against which the statute is directed."

*United States v. Rowe*, 56 F.2d 747, 749 (2d Cir.) (Learned Hand, J.) *cert. denied*, 286 U.S. 554 (1932); *see People v. Ross*, 25 Cal. App. 3d 190, 195, 100 Cal. Rptr. 703, 705–06 (1972); *State v. Sargent*, 2 Wash. 2d 190, 193, 97 P.2d 692, 693 (1940).

Thus, the State need not allege or prove that the victim suffered or sustained a pecuniary loss. *See State v. Mills*, 96 Ariz. 377, 381, 396 P.2d 5, 8 (1964); *State v. Armstrong*, 183 N.W.2d 205, 207 (Iowa 1971), *cert. denied*, 414 U.S. 857 (1973); *State v. Aurgemma*, 116 R.I. 425, 429–30, 358 A.2d 46, 49 (1976); *State v. Sargent supra; State v. Kennedy*, 105 Wis. 2d 625, 631 n.1, 636, 314 N.W.2d 884, 887 n.1, 889 (1981).

Nor does the statute require that the value of the property obtained by the defendant be offset by the value of the property received by the victim in determining the grade of the offense. RSA 637:4 focuses on the property obtained by the defendant. It is the value of that property which is determinative of the grade of the offense and not the value of the net loss to the victim. *See State v. Forshee*, 588 P.2d 181, 184 (Utah 1978); *People v. Ross supra.*

The trial court, therefore, did not err in ruling that the value of the Cutlass was immaterial and in excluding the proffered evidence.