STATE of Minnesota, Respondent,

v.

**Paul Henry RAY, Appellant.**

**No. C8–85–2064.**

Court of Appeals of Minnesota.

July 22, 1986.

Hubert H. Humphrey, III, Atty. Gen., James B. Early and Janet A. Newberg, Special Asst. Attys. Gen., St. Paul, Thomas Opeim, Norman Co. Atty., Ada, for respondent.

Marie L. Wolf, Susan Andrews, St. Paul, for appellant.

Considered and decided by FORSBERG, P.J., and SEDGWICK and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Following a court trial, appellant Paul Ray was convicted of theft by swindle and theft by false representation of a $10,000 check received from a farmer. Appellant was also convicted of aiding livestock theft in connection with the same general incident following a separate court trial the next week.[1] In the appeal from the theft by swindle and theft by false representation convictions, appellant claims the evidence was insufficient to establish either his intent to cheat the victims or that he did not have the defense of valid claim for services rendered. In his appeal from the livestock theft conviction, appellant claims the evidence was insufficient to establish intent to steal, lack of valid claim of right,

and acting without the owner's consent. We affirm.

## FACTS

*Theft by Swindle and by False Representation*

Erling Anderson, a rural Halstad, Minnesota, farmer, was in financial difficulties in 1982. An accountant, Joseph Mousel, introduced Erling Anderson to attorney Marshall Anderson (no relation), who filed two bankruptcy petitions to stem Erling's pending foreclosure. Appellant, an attorney suspended from practicing law, was brought into the case by Marshall Anderson in May, 1983, to assist as a paralegal.

After the Ada National Bank obtained authorization from the bankruptcy court to sell Anderson's farm machinery and equipment, the bank moved for state district court authorization to sell. Attorney Harold Stolpestad represented Anderson on this motion. The bank prevailed on the motion. Appellant advised Erling Anderson to appeal to a federal judge and get an appeal bond to stop the foreclosure. According to Erling Anderson, appellant said, "If I could get $10,000 and get this bond, I think I can stop it." Erling Anderson told appellant he had just received a check for about $10,000 from a recent sale of crops. Erling's wife, Evonne, testified that appellant said he could post a $10,000 appeal bond to stop the sale of their farm. Stolpestad testified that he overheard appellant discussing an appeal with Erling Anderson, that a bond was involved, and that the bond cost of $10,000 was discussed.

The next morning Erling Anderson and appellant went to the Red River State Bank in Halstad and exchanged Erling's $10,000 grain check for a bank money order. Erling deposited the money in his account, obtained a $10,000 cashier's check which he endorsed and gave to appellant for the "bond" to stop the sale of his farm.

---

1. Separate appellate briefs were filed by separate attorneys for appellant although only one notice of appeal was filed and only one case

number was assigned by the clerk of appellate court. The appeals should have been filed separately.

Appellant took the check to the Summit National Bank, cashed it, and received a $9,500 bank money order and $500 in cash. The next day, October 6, 1983, he gave the money order and another check for $1,500 to Gloria and Norman Sorenson for overdue contract for deed payments on a house in Mound, Minnesota. Evidence showed that the Sorensons had initiated proceedings to cancel the contract for deed.

No appeal bond was ever filed in any of the bankruptcy proceedings. The Andersons contacted appellant several times about the $10,000 check and the status of the bond. Appellant told them repeatedly he was working on it and that he still had the money.

During this time period appellant told Marshall Anderson he had obtained a $10,000 check to obtain a bond and told Marshall Anderson around October 13 that he still had not obtained a bondsman. Appellant told Marshall Anderson that he had the $10,000 in his billfold.

Appellant also told Earl Gray, an attorney who represented Erling Anderson on another matter, that he had a $10,000 check from Erling for a bankruptcy court appeal bond he was attempting to purchase. Gray indicated he had not been fully compensated by Erling. Appellant told Gray that he would pay Gray $1,000 from the proceeds after he purchased the bond.

On November 15, 1983, John Samuelson, an investigator from the Attorney General's Office, asked appellant if he had ever received money for work performed as a legal assistant in Anderson's bankruptcy. Appellant said he had not. Appellant denied receiving money for transportation or living expenses. Appellant claimed the attorney-client privilege and then said that he now had to talk to Marshall Anderson.

Samuelson saw appellant in the Hennepin County Law Library on February 6, 1984. Samuelson asked appellant about the $10,000. Appellant told Samuelson he had the money available for Erling Anderson but couldn't discuss the matter because of the attorney-client privilege. Appellant started to leave when Marshall Anderson approached. Appellant told Samuelson he still had the money and that Samuelson could find out where it was by appearing at a March 6 bankruptcy hearing in Fargo, North Dakota. The bankruptcy court had issued an order to show cause directing appellant and Marshall Anderson, and others, to appear and explain why they should not turn over all compensation received in connection with the bankruptcy cases. Appellant did not appear at the bankruptcy hearing.

Evidence showed that neither Marshall Anderson nor appellant ever sent the Andersons a bill for legal services. On September 20, 1983, appellant received from Erling Anderson's account checks totaling $2,500 with specific notations on them detailing what they compensated (transcript cost and reimbursement for Marshall Anderson). The $10,000 check on October 4 bore no such notations. Andrew Schmid, an attorney from the United States Trustee's Office who supervised the Anderson bankruptcy, testified that all professionals are required to file an application with the bankruptcy court for approval of employment before they are allowed to get paid for services rendered. Appellant made no such application.

Following a court trial, appellant was convicted of theft by swindle, Minn.Stat. § 609.52, subd. 2(4) (1984) and theft by false representation, Minn.Stat. § 609.52, subd. 2(3)(b) (1984). Appellant was sentenced to 15 months on the swindle conviction, execution stayed, and he was placed on probation for five years.

*Livestock Theft*

Most of the pertinent facts are contained in *State v. Mousel,* 373 N.W.2d 359 (Minn. Ct.App.1985), where we affirmed Joseph Mousel's conviction for aiding appellant in a scheme to steal livestock from Erling Anderson. Erling Anderson ran a feed lot and had a contract with Jim Erickson to fatten Erickson's cattle.

Evidence showed that in June and July, 1983, appellant and Mousel pushed the sale of the cattle. A neighbor, Donald Steen, testified that appellant represented him in a similar bankruptcy petition and that ap-

pellant told Steen cattle could not be removed from Steen's feed lot without a court order.

Joseph Mousel testified that he delivered the cash proceeds from the sale of Jim Erickson's cattle to appellant. Appellant told attorney Marshall Anderson he received $3,200 from Mousel.

Evidence also showed that appellant was involved in a complex series of transactions using cashiers checks, purchases, and "sell backs" to obtain cash. A sheet of paper bearing Mousel's handwriting, which divided up the sale of Erickson's cattle, showed as follows:

| Travel | – | $1,521 |
|--------|---|--------|
| Steen | – | 2,200 |
| Legal | – | 3,000 |
| Acct. | – | 2,594 |
| | | $9,315 |

The State alleged that of the $9,315 received from the cattle sale, $2,200 was taken by appellant and Mousel to pay for work done in the Steen bankruptcy, $1,521 was for travel expenses of appellant, $2,594 was Mousel's share, and $3,000 was taken by appellant.

Appellant was convicted of aiding livestock theft and sentenced to one year and one day, with execution stayed for five years on a condition that appellant serve six months in jail. The sentence was concurrent with appellant's sentence for theft by swindle.

## ISSUES

1. Was the evidence sufficient to sustain appellant's conviction for theft by swindle and false representation?

2. Was the evidence sufficient to sustain appellant's conviction for livestock theft?

## ANALYSIS

### Theft by Swindle and by False Representation

#### I.

*Sufficiency of the evidence*

■ Giving deference to the trier of fact's ability to judge credibility of witnesses and viewing the evidence in the light most favorable to the State, as we must, we hold the court reasonably found appellant guilty as charged. Numerous witnesses testified that appellant told the Andersons the $10,000 check was for an appeal bond to stop the sale of the Anderson's farm and machinery. Evidence supported the court's determination that appellant cheated the Andersons out of the $10,000 check by artifice and that he intentionally deceived them through false representations about his plans for the check.

Appellant claims the check was for payment for legal services rendered. However, only Marshall Anderson could bill the Andersons for legal services rendered since appellant was suspended from practicing law. Appellant never took any action to get Marshall Anderson's approval for attorney fees in bankruptcy court. After appellant obtained the check he told attorneys Marshall Anderson and Earl Gray the money was for a bankruptcy court bond, not for legal services. Further, neither appellant nor Erling Anderson treated the $10,000 check the same way they had treated previous checks for legal work and costs. After carefully explaining to the Erling Andersons that the $10,000 check was needed for a bond to help stop the farm foreclosure, appellant quickly took Anderson's $10,000 and used it to pay a personal obligation, appellant's contract for deed. This expenditure by appellant is inconsistent with any plausible theory of fair dealing and consistent with the trial court's finding of theft by swindle.

Appellant never did obtain a bond. Evidence showed the type of bond appellant talked to Erling Anderson about, if obtained, would have likely cost under $1,000. Appellant was dishonest in discussing with Erling Anderson, Marshall Anderson, Earl Gray, and John Samuelson what happened to the $10,000 check.

#### II.

*Claim of right*

■ Appellant claims he had a valid claim of right to the $10,000 check because

the Andersons owed him for legal work he performed on their behalf. In essence appellant claims he had a right to trick the Andersons out of the $10,000 check because of the work he performed.

In *State v. Lone,* 361 N.W.2d 854 (Minn. 1985), a theft by swindle case, the supreme court stated that once the victim parts with money in reliance on false representations, whether anything of value was received in return is immaterial. *Id.* at 860.

The Andersons were swindled when appellant intentionally tricked them into giving $10,000 for an appeal bond. Whether the Andersons received legal services, either before or after they gave the $10,000, is immaterial to the criminal charge because they gave the $10,000 for a bond, not in payment for legal services.

Appellant relies on an old Minnesota case, *State v. Brame,* 61 Minn. 101, 63 N.W. 250 (1895). There the defendant, an attorney, collected money from the victim and embezzled some of that money as payment for fees he claimed the victim owed him for other cases. In affirming the defendant's conviction, the court noted "there is evidence tending to show that defendant did not openly and avowedly appropriate the money under claim of title, but at first falsely denied having received it, and, when confronted with the proof that he had received it, promised to pay it, without at that time asserting any right to retain it." *Id,* 61 Minn. at 102, 63 N.W. at 250.

*Brame* does not support appellant's contentions. Appellant did not openly and avowedly appropriate the money under a claim of right. He did not tell the Andersons that he had a right to appropriate their funds for legal fees. Appellant did not sit down with Erling Anderson and his wife and tell them openly that he felt the $10,000 should be his for services rendered. Appellant kept silent about any claimed fees at the time he obtained the $10,000 and then quickly applied that $10,000 to his own personal debt. Appellant's claim for underpaid legal fees appears as an afterthought once his movements with Erling Anderson's $10,000 came to the surface.

In *State v. Kennedy,* 105 Wis.2d 625, 314 N.W.2d 884 (Wis.Ct.App.1981), the court discussed the public policy concerns against recognizing a claim of entitlement defense in prosecution for theft by fraud. "To recognize the defense would be to sanction self redress through artifice and dishonesty." *Id.* at 640, 314 N.W.2d at 891.

## Livestock Theft

### I.

### *Sufficiency of Evidence*

■ The evidence was sufficient to prove appellant intended to commit theft. Appellant knew it was illegal to remove Erickson's cattle, yet pushed ahead for the sale. Appellant received the proceeds from the cattle sale and proceeded to engage in several financial transactions, which indicates an attempt to "launder" the money.

### II.

### *Claim of Right*

There is no merit to appellant's contention that he had a claim of right to the cattle. Neither appellant nor Marshall Anderson ever petitioned the bankruptcy court for payment. Regardless of appellant's claim for services from Erling Anderson, he had no right to remove and sell Jim Erickson's cattle.

### III.

### *Proof of Lack of Consent*

Appellant also contends the State failed to prove the cattle were taken without the owner's consent. Erickson testified that the cattle were sold without his consent. This testimony was sufficient to establish that appellant and Mousel acted without the owner's consent. We do not believe, as appellant contends, that all of the Erling Anderson bankrupt estate creditors were required to testify that they did not give either Mousel or appellant permission to steal the cattle. Each and every creditor did not have to so testify for the State to sustain its burden of proof. If appellant claimed that any person with an indicia of

ownership gave him permission to sell the cattle, appellant was free to call that person as a witness. The record fairly discloses that the State proved the essential elements of the crime charged.

## DECISION

Appellant's convictions for theft by swindle and theft by false representation are affirmed. The evidence supports the court's determination that appellant intentionally cheated the Andersons out of their $10,000 check when he told them it was to purchase an appeal bond to forestall their farm foreclosure. Appellant's conviction for livestock theft is also affirmed.

Affirmed.