STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald McNEARNEY, Defendant-Appellant.†

Court of Appeals

*No. 92-1063-CR.    Submitted on briefs January 5, 1993.—Decided March 25, 1993.*

(Also reported in — N.W.2d —.)

For the defendant-appellant the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender, of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

†Petition to review denied.

EICH, C.J.    Ronald McNearney appeals from a judgment convicting him of attempted theft by fraud, contrary to secs. 943.20(1)(d) and 939.32(1), Stats., and an order denying his motion for postconviction relief.

The appeal may be decided on a single issue: When a defendant is charged with fraudulently obtaining an airline ticket from a travel agency, is the amount of the federal tax on the ticket included in its "value" for purposes of determining whether the charge is punishable as a misdemeanor or felony under sec. 943.20(3)(b), Stats.?[1] We hold that the tax is included in the ticket's value and we affirm the judgment and order.

The facts are undisputed. Using a false name and identification, McNearney opened an account with a travel agency and ordered an airline ticket for travel from Madison to Cincinnati, Ohio. The ticket price was $528, including $39.12 in federal air transportation taxes. McNearney was arrested before he was able to use the ticket and charged with attempted felony theft by fraud—obtaining property of a "value" exceeding $500 from the travel agency.

McNearney moved to dismiss the charge at the preliminary hearing on grounds that the stated value of the ticket, *excluding* the federal tax, was only $488.88—an

---

[1] Section 943.20(1)(d), Stats., makes it a crime to obtain property from another "by intentionally deceiving him [or her] with a false representation . . .." Section 943.20(3) is entitled "PENALTIES" and provides in pertinent part as follows:

> Whoever violates [this section]:
>     (a)   If the value of the property does not exceed $500, is guilty of a Class A misdemeanor.
>     (b)   If the value of the property exceeds $500 but not $2,500, is guilty of a Class E felony.

The cutoff between a felony and a misdemeanor in sec. 943.20(3) has since been raised to $1,000.

amount below the $500 felony/misdemeanor cutoff specified in sec. 943.20(3), Stats. The magistrate denied the motion and McNearney was bound over for trial.

McNearney eventually agreed to plead no contest to the theft charge (and a related charge of obstructing an officer) in exchange for the state's agreement for a joint prosecution/defense recommendation of two years' imprisonment, to run concurrent to a related federal sentence. The trial court declined to accept the recommendation—primarily on the basis of McNearney's lengthy and extensive record of fraud-related offenses—and sentenced him, as a repeater, to a total of four years in prison. McNearney then moved to withdraw his plea to the theft charge, renewing his argument that the value of the ticket was less than $500.

At the hearing on his motion, McNearney offered the testimony of a property appraiser, William Wartmann. Wartmann testified that there are generally accepted principles used by appraisers in determining the value of personal property and that in his own appraisals he does not include sales tax in his valuations. This is so, according to Wartmann, because sales taxes "var[y] from state to state."

Linda Shropshire, an employee of the travel agency, testified that the value of the ticket obtained by McNearney was $528. On cross-examination by defense counsel, Shropshire acknowledged that the $528 figure included the federal tax, stating that they just charge the "flat fee" for the ticket and "don't divide it out." She also testified that if McNearney had elected to "cash [the ticket] in," he would have received $528 for it.

The trial court denied McNearney's motion and he appeals. He points first to sec. 943.20(2)(d), Stats., which defines "value" as "[t]he market value at the time of the theft or the cost to the victim of replacing the

property . . . whichever is less," and cites the standard definition of "market value" as the price the property will bring in a transaction between a willing seller and buyer. Then, citing a legal dictionary, he asserts that a tax is not something that is imposed by contract, but by an act of the government. Thus, says McNearney without further elaboration, "taxes simply are not figured in when determining the market value of an item."

Aside from relying on the Wartmann testimony, the only authority cited by McNearney in support of his argument is *Liddle v. Liddle*, 140 Wis. 2d 132, 410 N.W.2d 196 (Ct. App. 1987), a divorce case in which we held that the trial court did not exceed its discretion when it took future capital gains taxes in valuing various investments. In that case, however, there was no challenge to the propriety of considering the tax consequences of a property division in a divorce proceeding—indeed, as we noted in our opinion, the parties agreed that the trial court is *required* to do so by statute. *Id.* at 143, 410 N.W.2d at 201. The challenge to the valuation in *Liddle*—which we rejected—was simply that the taxes were remote and speculative. *Id.* We do not see the case as at all instructive on the issue before us.

The tax collected on the sale of air transportation is a federal tax imposed by 26 U.S.C. § 4261(a). It is required by law to be collected by the travel agency at the time it issues the ticket and thus is included in the price. Exclusive of its commission, the agency must pay to the airline the federal tax for the transportation purchased by the customer. And, as we have noted, had McNearney elected to redeem the ticket for cash, he would have received $528 for it.

Nor are we persuaded by the Wartmann testimony. Wartmann acknowledged that he had never been called

upon to place a value on airline tickets; and his testimony was, in essence, that he would not include the sales tax in his appraisal of other property because sales taxes—unlike the federal transportation tax at issue in this case—vary from state to state.

We are not dealing in this case with the value of an antique, or jewelry, or an automobile, or other more "traditional" items of personal property that might be the subject of an appraisal—or a theft. McNearney was convicted of fraudulently obtaining air transportation—in the form of an airline ticket—from the travel agency. The travel agency paid the airline $528 for that transportation and wrote the ticket for McNearney—a ticket that was thereafter redeemable by him for $528. The property McNearney received was obtained through a federally-taxable transaction, and we conclude that the amount of that tax is properly included in calculating the applicable penalty for the offense.[2]

*By the Court.*—Judgment and order affirmed.

---

[2] The value of the property obtained is not an element of the crime of theft by fraud; it is of significance only in determining the applicable penalty upon conviction. *State v. Kennedy*, 105 Wis. 2d 625, 636, 314 N.W.2d 884, 889 (Ct. App. 1981); *see also White v. State*, 85 Wis. 2d 485, 492, 271 N.W.2d 97, 100 (1978).