**STATE of Minnesota, Respondent,**

v.

**Joseph MOUSEL, Appellant.**

**No. C9–85–16.**

Court of Appeals of Minnesota.

Aug. 27, 1985.

**360**

Hubert H. Humphrey, III, State Atty. Gen., Janet A. Newberg, Sp. Asst. Atty. Gen., St. Paul, Thomas A. Opheim, Norman County Atty., Ada, for respondent.

C. Paul Jones, State Public Defender, Mollie G. Raskind, Deputy Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Appellant Joseph Mousel was convicted of aiding livestock theft, Minn.Stat. §§ 609.551, subd. 1(a) (1984) and 609.05, subd. 1 (1984). On appeal he contends the evidence was insufficient, his motion for a new trial was erroneously denied and prosecutorial misconduct was committed in closing argument. We affirm.

## FACTS

Appellant was charged with being involved in a scheme to steal livestock from Erling Anderson, a farmer in rural Halstad, Minnesota. Anderson ran a feed lot whereby he fattened cattle; from 1981 to 1983 his sole customer was James Erickson. They orally agreed that Anderson would feed the cattle and Erickson would remove and sell the cattle. Anderson was paid $.42 per pound of weight gain. Around March 1983 Erickson delivered 411 head of cattle.

In 1982 Anderson had begun experiencing financial difficulties. In June 1982 a van containing many people, including appellant, pulled up in Anderson's farmyard. Appellant told Anderson that he dedicated his life to helping people in distress. They talked and appellant left his business card which indicated that he was a certified public accountant. Early in 1983 Anderson learned that the bank was foreclosing on his farm. Anderson called appellant and they met in the Twin Cities. Anderson told appellant that he needed help. In discussing fees appellant told Anderson no fee need be paid because you can't pay for a miracle and that is what appellant would be performing.

Appellant introduced Erling Anderson to Marshall Anderson, a lawyer he described as not "too good, but he was cheap." Marshall Anderson agreed to help fight the foreclosure and agreed on a retainer of $2,000 for two bankruptcy petitions to be filed. Marshall Anderson filed the bankruptcy petitions assisted by Paul Ray, a lawyer who had been suspended from prac-

tice. Marshall Anderson, appellant and Ray drove up to Anderson's farm for the first meeting of creditors on May 17, 1983. At this time Ray began performing most of Erling Anderson's legal work instead of Marshall Anderson.

Marshall Anderson testified the sale of Erickson's 411 head of cattle was contemplated in the bankruptcy plan but the bankruptcy court would have to approve the sale first. Ray told Erling Anderson it was permissible to sell the cattle. Appellant had also told Erling Anderson that as a debtor in possession he was the judge and could do whatever he wanted with the cattle.

On July 18, 1983 appellant arrived at the Anderson farm to transport cattle for sale. Appellant asked where to take them and was told the two largest livestock commission firms were in Fargo, North Dakota. Appellant was told he needed "branch sheets" to sell cattle.

Appellant told Erling Anderson four loads of cattle would be sold; the proceeds from the sale of three loads would go to appellant and Ray and from the fourth load to Erling Anderson. Subsequently, three loads (22 head of cattle) were taken to McDonald Livestock Commission. Appellant completed the "branch sheets" using the name "Kenneth Peutz, Lisbon, North Dakota." On the way to the livestock commission, Anderson's son Tim talked to appellant about business in general and appellant advised Tim not to do business with banks and to stay away from social security and tax identification numbers. Subsequently appellant indicated that a fourth load of cattle could be taken to the McDonald Livestock Commission for sale and Tim prepared the "branch sheet" for this load, using his father's name and address as the owner of the cattle.

After appellant obtained a check for $9,315.62 payable to "Kenneth Peutz" he went to the First Bank of North Dakota in Fargo. Appellant testified he endorsed the check "Kenneth Peutz" and received nine $1,000 money orders and one for $315. A bank officer testified the check was cashed out for currency, but a stipulation entered into between the State and appellant agreed that bank records were insufficient to indicate how the money was actually paid out.

Meanwhile Erickson learned that his cattle were being claimed as assets in Erling Anderson's bankruptcy. Erickson spoke to appellant who told Erickson to call Marshall Anderson to make arrangements for the sale of the cattle. Appellant did not tell Erickson he had already sold 22 head of cattle. When Erickson arrived to retrieve his cattle he found he was short 31 head. Erling Anderson told him nine had been sold in his own name and that the other 22 had been sold with the proceeds going to appellant and Ray. Erickson obtained an order from the bankruptcy court to remove the balance of his cattle.

Tim Anderson was charged with livestock theft. When he heard about the warrant for his arrest he called appellant. Appellant told him a "summons" was just a request to come to a hearing and he didn't have to comply. Appellant also told him not to say anything and not to "name names."

Marshall Anderson asked appellant what happened to the proceeds of the sale of the 22 head of cattle but did not receive a satisfactory response from appellant. Appellant provided Marshall Anderson an accounting but Marshall Anderson felt this was inadequate to submit to the bankruptcy court which had ordered Marshall Anderson to account for the proceeds. Andrew Schmid, an attorney from the United States Trustees Office who supervised the Anderson bankruptcy, testified that all professionals are required to file an application with the bankruptcy court for approval of employment before they are allowed to get paid for services rendered and that an application for payment must be made. Neither appellant nor Ray filed such applications. Further he testified that neither appellant nor Ray appeared at an order to show cause hearing ordered by the bankruptcy court in 1984.

When pressed by Marshall Anderson for an account, appellant told him all of the proceeds went to Ray. Testimony from a bank officer in Norwest Bank in Hopkins, Minnesota showed that in July and August 1983 Ray was involved in a series of transactions. Initially he bought a cashier's check with $3,020 and then he would cash it and purchase a new cashier's check in a lower amount and obtain the difference in cash. This was done until all of the money was eventually obtained in cash.

Investigators executed a search warrant on appellant's home in October 1983 and located the "branch sheet" used by appellant to sell the cattle and a sheet of paper bearing appellant's handwriting and dividing up the proceeds from the sale of Erickson's cattle. The paper contained an itemized list of four components, totaling exactly $9,315.62.

The jury convicted appellant of aiding in livestock theft and appellant was sentenced to 15 months. Execution was stayed on the condition that appellant serve six months in jail and pay $9,315.62 restitution.

### ISSUES

1. Was the evidence sufficient?

2. Did the trial court err in denying appellant's motion for a new trial based on newly discovered evidence?

3. Did the prosecutor commit reversible prosecutorial misconduct in closing argument?

### ANALYSIS

#### I.

■ We have reviewed the record and find there was ample evidence to convict appellant of aiding livestock theft. Evidence was sufficient to establish that appellant had the requisite criminal intent; in fact a reasonable inference from the record is that appellant intended to swindle Anderson when he first met him. There is also no merit to appellant's contention that he was merely following the directions of attorneys since the evidence showed that Ray was appellant's accomplice in this entire scheme.

#### II.

At trial a bank officer for First Bank of North Dakota testified that a check for $9,315.62 payable to "Kenneth Peutz" was negotiated and that the individual received cash. Appellant testified he received money orders not cash. Before closing argument the parties stipulated that if the officer were called he would testify that the transaction would be shown as a cash out and would not preclude the possibility that money orders were purchased. Appellant claims that because he subsequently obtained copies of the money orders his motion for a new trial based on newly discovered evidence was improperly denied by the trial court.

The Minnesota Supreme Court has set the following standards for new trials based on newly discovered evidence:

> If the new evidence is doubtful in character, not so material as to make probable a different result on a new trial, or merely cumulative or impeaching, relief will be denied, nor will relief be granted, even though very material facts have been brought to light, if they could, by the exercise of proper diligence, have been discovered and presented in the first trial.

*State v. Baugh*, 323 N.W.2d 804, 806 (Minn.1982) (quoting *State v. Bergeson*, 203 Minn. 88, 89, 279 N.W.2d 837, 838 (1938)).

■ Here a new trial is not warranted because admission of the copies of the money orders would have been cumulative, would unlikely have affected the result and the evidence could have been discovered and presented at trial through proper diligence since its existence was known. In light of the stipulation regarding the money orders, there was no harm in any event.

#### III.

Appellant claims the prosecutor committed prosecutorial misconduct several times in closing argument.

1. Appellant's first complaint is the following:

Those are all the elements of the offense of aiding livestock theft, ladies and gentlemen, and the offense has been proven beyond a reasonable doubt. I'd like to warn you before defense counsel gives closing argument to beware of the distractions that have been thrown at you during the course of this trial. If any of you are familiar with the octopus, it's probably similar to a lot of what's going on by the defendant and Paul Ray, reaching and grabbing anything. But when an octopus must defend itself, it squirts out these black inky clouds to hide where its going, and that's what the defense has done here during the course of this trial. They want to divert you from the sale of the cattle under a phony name, from the receipt of proceeds, from where the money went. There are four basic distractions I'd like to warn you about.

■ Appellant claims this constituted improper expression and personal opinion. Not only was there no objection made but there was nothing to object to as this was proper argument.

2. The second point of contention is as follows:

In summary, ladies and gentlemen, what we have here is an infestation of leeches. The defendant Joseph Mousel met Erling Anderson in June of 1982 and won his confidence. When Erling Anderson had serious financial difficulty in early 1983, he called on the person he believed could help him, Joseph Mousel. Joseph Mousel met with him, he advised him, he provided advice to him. He brought in Marshall Anderson to help him in mid-March of 1983. Paul Ray came into the case, all of them sucking at the lifeblood of the Erling Anderson bankrupt estate. We know that Erling Anderson would have had $40,000 by now from the sale of that cattle if 22 head hadn't been stolen, and we know that he would have been over $20,000 richer if he had never met Paul Ray or

Joseph Mousel. Erling testified that Paul Ray got $10,000 from some bond he's never seen since, $2,500 in extra money, that $9,315.62 from the cattle is gone, and that $5,500 check that he gave to Joseph Mousel before filing bankruptcy in March of 1983, didn't get all the funds back; and Erling testified that's over $20,000 plus he doesn't have the $40,000 that he would have had from the sale of that cattle last July, 1983. Paul Ray and Joseph Mousel enjoyed a very beneficial parasitic relationship and what they did together is they destroyed Erling Anderson and his bankrupt estate.

Again no objection was made and the argument was proper.

■ 3. The final comment deemed objectionable by appellant is as follows:

The final distraction of the four is the financial argument. Paul Ray got all the money; therefore, I'm not guilty, according to Joseph Mousel. That's not true, ladies and gentlemen. Even if—let's assume Paul Ray got all the money—and we know now he didn't—assume he did. We are not charging Joseph Mousel with doing this all on his own and keeping all the money. The charge is aiding livestock theft. If he did anything to aid and advise someone else in the theft of the cattle, it doesn't matter how the two divided up the money. If you walk into the Ada National Bank with a gun, if you hold them up, give me all your money, they give you a bunch, you go home and you give it to a friend, you're telling me you're not guilty of aiding of an armed robbery or bank robbery? Of course you are.

Appellant's objection was overruled, the trial court noting the example of the bank robber was a simile. Appellant complains the argument confused the jury into equating appellant with a principal, i.e. the bank robber. Under Minn.Stat. § 609.05, subd. 1, "[a] person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." An aider is as crimi-

nally liable as the "principal"; we have difficulty following the logic of appellant's argument. Even if error was somehow committed it was harmless under the standards in *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974).

## DECISION

Evidence was sufficient to convict appellant of aiding livestock theft. A new trial based on newly discovered evidence was properly denied and no prosecutorial misconduct was committed in closing argument.

Affirmed.